(32 App. Div. 206.)

RHODES v. LAUER et al.

(Supreme Court, Appellate Division, Third Department. July 6, 1898.)

1. MASTER AND SERVANT—INJURIES—FELLOW SERVANTS.
   Where a mason employed in laying a retaining wall of a canal was killed by a large stone which slipped off the edge of the bank of the canal, where it had been deposited by teamsters employed in hauling stones to be used in the construction of the wall, the negligence, if any, was that of a fellow servant; hence there was no liability on the part of the employer.

2. SAME—NEGLIGENCE—WHAT CONSTITUTES.
   The fact that a foreman directed teamsters to unload stones, to be used in the construction of a retaining wall for a canal, as near the edge of the bank as they could without having them roll into the canal, where it was not shown that there had been any indications that the edge of the bank was soft, does not constitute negligence, as to a mason at work below the bank.

Appeal from trial term, Montgomery county.

Action by George D. Rhodes, administrator, against Frederick Lauer and others. From a judgment of nonsuit, plaintiff appealed. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Sullivan & Burke, for appellant.
E. P. White, for respondents.

LANDON, J. The action is to recover upon account of the death of the plaintiff's intestate, alleged to have been killed in consequence of the negligence of the defendants. The defendants were engaged, under a contract with the state, in deepening the Erie Canal in the city of Amsterdam, and had in their employ a large force of workmen, among whom was the plaintiff's intestate, who was engaged in laying a slope retaining wall upon the north bank of the prism of the canal. They had excavated the bottom of the canal at this point to a depth of two feet below the old retaining wall, and the plaintiff's intestate, with others, was laying from the new bottom a new wall up to the old wall, and uniting with it, so that the old and new wall should together form one continuous wall from the bottom of the canal to the top of the bank; the total height being fourteen feet as the wall sloped outward,—the perpendicular height being slightly less. At the point where the plaintiff's intestate was working, about four feet of the old wall remained intact, and about four feet of the new wall had been constructed, leaving about six feet to be built to unite the new with the old wall. Teamsters were hauling stones to be used in laying the wall. They unloaded these stones from their wagons, and deposited them upon the top of the bank, and near to its edge, so that they could be passed down to the wall layers by other workmen. While the plaintiff's intestate, April 5, 1897, was standing and working upon the new wall, with his back towards the bank where some stones had a few minutes before been deposited by a teamster, a stone weighing 200 pounds slipped off the edge of the bank, and fell upon him and killed him. Why the stone fell was not

clearly shown. The plaintiff urges that this was not a safe place to work. If there was any other danger than from stones falling from the top of the bank, plaintiff's intestate was not injured by it. While the stones were being unloaded directly over the place where plaintiff's intestate was working, he and Luke, another wall layer, working four feet from him, stopped work, and stepped down, and out of the way of danger. When the unloading was completed, they resumed their work. Luke testifies that before resuming work he looked up the bank, and saw no stone near the edge. We have the fact that the bank was sustained by the four feet of the old wall; that there was no person upon the bank near the stone when it fell; that no one observed it before it fell. How much the earth on the bank rose above the top of the wall, is not shown; but we infer it did to some extent, since, when the stone slipped, it left its trail in the earth as if it had been pushed or rolled off. It probably could be inferred from all the evidence that the towpath was somewhat higher than the retaining wall, and that the stone was placed so near its edge that the earth upon which it rested gradually yielded beneath it, and thus it fell. If so, the negligence, if any, was that of a fellow servant. There was evidence to the effect that the foreman of the defendants told the teamster to unload the stones as near to the edge of the bank as he could without having them roll over into the canal. We do not think negligence or willfulness can be imputed to the defendants because of such a direction. From the nature of the work, any intelligent teamster should infer as much without direction. It does not appear that there had been any indications that the edge of the bank was soft or yielding. We think the judgment should be affirmed.