Judgment and order reversed upon questions of law, and a new trial granted, with costs to appellant to abide event. All concur.

---

EICHOLZ et al. v. NIAGARA FALLS HYDRAULIC POWER & MFG. CO.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. MASTER AND SERVANT—INJURY TO SERVANT—CAVING OF BANK—EVIDENCE.
    Plaintiff's testator was building a retaining wall some distance from where a ditch was being dug in which a conduit of masonwork was to be constructed. Testator had never worked on the conduit, and had no knowledge as to the condition of the excavation. Defendant's superintendent ordered testator's foreman to direct him to go to work in the conduit, which he refused to do on the ground that the bank was unsafe, whereupon the superintendent peremptorily ordered testator to go into the ditch, and he was injured by the falling of the bank. *Held,* that such facts justified a finding that defendant did not provide a safe place for plaintiff's testator to work, to the knowledge of the superintendent.

2. SAME—ASSUMPTION OF RISK.
    There being nothing which testator could see, in the exercise of ordinary care, that was indicative of danger, defendant having made the excavation and peremptorily ordered him to go into it to work, testator did not assume the risk of the accident which occurred.

3. SAME—FELLOW SERVANTS.
    Employés engaged in digging a conduit, and under a separate foreman and having nothing whatever to do with the masons engaged in constructing a conduit in the ditch, are not fellow servants with the masons.

4. SAME—PLACE TO WORK—PREPARATION—DELEGATION OF AUTHORITY.
    A master cannot relieve himself from his obligation to furnish a servant a reasonably safe place in which to work by delegating the duty to another servant; and, if delegated, such servant's failure to perform the duty is chargeable to the master.

5. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
    Where a mason constructing a conduit was peremptorily ordered into the trench by defendant's superintendent, who had knowledge that the bank was unsafe, and until such time plaintiff's testator had not worked on the conduit, and had no knowledge of the condition of the excavation, and he was injured by the falling of the bank, the question of his contributory negligence was for the jury.

6. SAME—DAMAGES—PLEADING—ALLEGATIONS—PROOF.
    A complaint alleged that plaintiff was greatly shocked and bruised about his body, his spinal column strained, and his leg bruised, and the

cords and muscles lacerated, causing him great pain, and that he was rendered sick, sore, and lame, and unable to perform any work, was sufficient to entitle plaintiff to prove that diabetes, with which he was suffering at the time of the trial, was caused by or resulted from the injury.

**7. SAME—EVIDENCE.**

Where defendant introduced evidence that plaintiff's testator was suffering from diabetes, and thereby sought to account for his condition at the time of the trial, and prior to the injury testator had been a robust man, and plaintiff's experts testified that, in their opinion, the disease was due to the injury, though they admitted that it might be produced by a large number of causes, the evidence on the question of whether it was so caused was not so speculative that it should have been withdrawn from the jury, though defendant's experts testified that the disease was not caused by the accident.

**8. SAME—DAMAGES—EXCESSIVE DAMAGES.**

Where plaintiff's testator was so injured by the falling of earth into a trench in which he was working that he was incapacitated from performing any vocation, and at the time of the trial was suffering from diabetes, which might have been caused by the accident, a verdict for $6,166.79 was not excessive.

Hiscock and Spring, JJ., dissenting.

Appeal from trial term, Niagara county.

Action by John Eicholz, revived after his death in the name of Mary Eicholz and another, as executors, against the Niagara Falls Hydraulic Power & Manufacturing Company. From a judgment in favor of plaintiffs, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Alfred W. Gray, for appellant.

P. F. King, for respondents.

McLENNAN, J. Although the record in this case is voluminous, the material facts are few, and are not in serious conflict. The defendant was the owner of a system of canals in the city of Niagara Falls, N. Y., constructed for the purpose of developing water power. At the time in question it was engaged in building a conduit from the end of its main canal, and at right angles to it, to convey water into a forebay or storage reservoir. An excavation about 18 feet deep and 40 feet wide, through clay earth of different varieties, had been made, in which to construct the conduit. The defendant was also doing construction work on its main canal some little distance from where the excavation was made, which consisted of building a retaining wall at right angles to it. The construction of the retaining wall had nothing to do with the construction of the conduit, and was for an entirely different purpose, to wit, to support a bank upon which a railroad track had been constructed. The entire work under construction by the defendant had been planned by its engineer, one Wallace Johnson. It also had a superintendent, one Ross Coddington, who had general charge of the entire work, and who was charged with the duty of seeing to it that it was executed in accordance with the plans of the engineer. The defendant also had a foreman, who was under the immediate super-

vision of Coddington, by the name of O'Leary, and he had charge of the laborers who did the excavating. The defendant also had a foreman of masons, Charles Reisig, who had charge of the stone masons, but who had nothing to do with the excavation, or with the men employed upon that work. The conduit was to be built of masonry at the bottom of the excavation by masons under the direction of the mason foreman, Charles Reisig. The plaintiffs' witnesses testified that the bank of the excavation was left substantially perpendicular. The witnesses called by the defendant state that it sloped back six inches to each foot. Plaintiffs' testator, who was a stone mason, was first employed by the defendant on the 19th day of July, 1898, and commenced work on the south end of the retaining wall, nearly 50 feet from the excavation. He continued to work on the wall until the afternoon of July 25, 1898, when he was directed to go into the trench and work on the conduit. Until then he had never worked upon the conduit, or in its immediate vicinity. He did not know, and had no means of knowing, about the bank of the excavation, its situation or condition. From where he had been at work on the retaining wall, he could have seen the excavation, but during that time there had been no caving in or falling of the bank, or anything to attract his attention to it. On July 25, 1898, Reisig, the foreman of the masons, was given orders by Coddington, the general superintendent, to commence work on the conduit. A short time before, Reisig discovered that the bank was cracked on the top, three or four feet back from its edge, and he so reported to the general superintendent, Coddington, and informed him that the bank was unsafe, and Reisig refused to put his men in the trench. Coddington, according to the evidence, gave Reisig a peremptory command so to do, but Reisig refused to obey, and Coddington then himself ordered the masons, plaintiffs' intestate among them, to go into the excavation and work upon the conduit. Plaintiffs' testator with the other masons, pursuant to Coddington's most emphatic command, entered into the trench, and commenced laying stone. He had worked but a short time, when a large quantity of earth came from the top of the bank, where it had been cracked, down upon him, and he sustained the injuries for which recovery is sought in this action. Plaintiffs' testator was very seriously injured, and prior to the accident he had always been well, robust, and strong.

The facts above recited are substantially as claimed by the plaintiffs, and, while the proof as to some of them is conflicting, there is evidence from which the jury would have been justified in finding the facts to be as above recited. Upon those facts it would seem clear the jury was justified in finding that the defendant did not provide a safe place for plaintiffs' testator to work in, and that for its failure so to do it was liable. Coddington had general supervision of the work, and was the alter ego of the defendant. He had been informed that the bank which fell upon the deceased was unsafe. His attention had been especially directed to the fact that a large crack existed in the top of the bank, which rendered it liable to fall at any moment; yet, notwithstanding such information,

he peremptorily ordered plaintiffs' testator and his associates to commence work in the place which he knew or ought to have known was dangerous, and which proved to be so in fact. The cases cited by appellant's counsel—Del Sejnore v. Hallinan, 153 N. Y. 274, 47 N. E. 308; Rhodes v. Lauer, 32 App. Div. 206, 53 N. Y. Supp. 162; O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74—are in no way authority for the proposition that under the facts disclosed by the evidence in this case defendant's negligence was not established. The case of Del Sejnore v. Hallinan, supra, is clearly distinguishable by the fact that "the defendants had furnished planks and braces with which to shore up the trench, and had instructed their employés to keep a watch for any cracks or evidence of the giving way of the earth, and upon the discovery of any tendency in that direction to immediately shore up the walls of the trench. It further appeared that a careful watch had been kept, but that nothing had been observed tending to indicate the approaching calamity." So, in Rhodes v. Lauer, supra, which was a case where stone which was being unloaded by one of defendant's teamsters fell from a bank into a trench where plaintiff's intestate was working, and injured him in such manner as to cause his death. The load of stone had been placed so near the edge of the bank by the person who was unloading it that the bank gave way, and the stone fell to the trench below. The court said:

"There was evidence to the effect that the foreman of the defendant told the teamster to unload the stone as near the edge of the bank as he could without having them roll over into the canal. We do not think negligence or willfulness can be imputed to the defendant because of such direction. From the nature of the work any intelligent teamster should infer as much without direction. It does not appear that there had been any indications that the edge of the bank was soft or yielding."

In that case there was nothing to indicate to defendant's foreman that any danger was to be apprehended, while in the case at bar, as we have seen, defendant's general superintendent was informed in the most positive way that the bank was cracked, and was in danger of falling at any time upon any one who should be at work in the trench below. In O'Connell v. Clark, supra, the court said: "The risk was obvious, and as palpable to the plaintiff as it was to the defendant." This remark is sufficient to entirely distinguish that case from the one at bar. These cases in no manner conflict with the rule laid down in Kranz v. Railway Co., 123 N. Y. 4, 25 N. E. 206, 20 Am. St. Rep. 716, which was also a case where the deceased was working in a trench. The official headnote is as follows:

"The question of defendant's negligence should have been submitted to the jury; that defendant owed to W. the duty of providing a place reasonably safe for the work he was directed to do; that those who opened the trench were performing the master's duty, and W. had a right to assume that the place had been made reasonably safe."

A large number of cases are cited by respondents' counsel, which make it clear that under the facts disclosed by the evidence in this case it cannot be said, as matter of law, that the defendant furnished to the deceased a reasonably safe place in which to do

the work he was directed to do, especially in view of the fact that the defendant knew of the unsafe condition; but that the question of defendant's negligence was for the jury, and its finding in that regard should not be disturbed. We think it equally clear that the deceased did not assume the risk of the accident which occurred. He took no part in making the excavation. He was not engaged in that kind of business. The place was made by the master for him to work in. He had no opportunity to ascertain its real situation. There was nothing which he could see, in the exercise of ordinary care, that was indicative of danger; and when he was given the peremptory order by the superintendent of the defendant to work in the trench in question he had a right to assume that it was reasonably safe for him to do so. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449. In the Pantzar Case, supra, the court said:

"The rule that the servant takes the risk of the service presupposes that the master has performed the duties of care and vigilance which the law casts upon him. It only excuses where injury results to the servant from a hazard incident to the nature of the employment, not from a cause which the exercise of proper care and prudence on the part of the master would have foreseen and guarded against."

The question of co-servant is hardly presented by the facts in this case, because the employés under O'Leary, in making the excavation and in preparing the place in which to construct the conduit by the deceased and his associates, really represented the defendant. They were performing duties which the master was bound to perform for the protection of his servants; and the negligent performance by a servant delegated to perform such duties is regarded in law as the master's failure or negligence, and not merely the failure or negligence of the co-servant. Loughlin v. State, 105 N. Y. 162, 11 N. E. 371. As we have said, the defendant was required to furnish a reasonably safe place for the deceased to work in, and he could not relieve himself of such obligation by delegating the duty to some other servant; and, if delegated, the failure to perform such duty by the servant was chargeable to the defendant.

The question of contributory negligence was clearly for the jury, and their finding in that regard should be considered as final. Upon the merits, therefore, the evidence amply justified a verdict in favor of the plaintiffs.

Appellant's counsel strenuously urges that the judgment should be reversed, and a new trial granted, because of certain rulings made by the trial justice to which exceptions were duly taken. A few of the exceptions will be considered. During the progress of the trial it developed that plaintiffs' testator was suffering from diabetes. That the deceased, at the time of the trial, and for some time prior thereto, had been suffering from such disease, was substantially admitted. Plaintiffs' counsel was permitted, under defendant's objection, to give evidence tending to prove that the disease was caused by or resulted from the injury. It is urged that the evidence was improperly received, because the allegations in the complaint respecting the injuries were not broad enough to make such

evidence admissible.   We think the evidence was properly received. The allegation in the complaint is as follows:

"That thereby this plaintiff was greatly shocked and bruised about his body, his spinal column strained, and his leg bruised, and the cords and muscles lacerated, torn and disconnected from the bone, and otherwise injuring the plaintiff and causing him great pain and suffering, and he was rendered sick, sore, and lame, and now is, and ever since remained, sick, sore, and lame, and unable to perform any work at his trade or otherwise, or to follow his usual vocation, or any other."

The case of Ehrgott v. Mayor, etc., 96 N. Y. 265, 48 Am. Rep. 622, was an action to recover for personal injuries.   In that case it was alleged in the complaint "that he [the plaintiff] suffered great bodily injury; that he became, and still continued to be, sick, sore, and disabled; that he was obliged to spend large sums in attempting to cure himself, and was prevented for a long time from attending to his business; and that he was otherwise injured to his damage of $25,000."   The court said:

"These allegations are sufficient to authorize proof of any bodily injury resulting from the injury, and, if the defendant desired that they should be more definite, it could have moved to have them made more specific, or for a bill of particulars."

It is claimed by appellant's counsel, in effect, that a different rule was laid down in Kleiner v. Railroad Co., 162 N. Y. 193, 56 N. E. 497.   In that case the allegation was:

"Whereby the plaintiff received severe and painful contusions to her head and body and arms, and lacerated her scalp, and whereby she sustained severe nervous shock and concussion of the brain, and injured her eyesight, and she was for a time rendered unconscious, and she thereby sustained permanent injuries, and was injured for life; all to her damage," etc.

Under that allegation it was held that it was not competent to prove that the result of the "shock was to produce heart disease, vertigo, curvature of the spine, and other diseases."   But in that case the court expressly affirms the doctrine laid down in the Ehrgott Case, supra, and points out the distinction between it and the case there under consideration.   Judge Martin, in writing the opinion in the Kleiner Case, said that the court held that the allegation in the complaint in the Ehrgott Case was sufficient, "inasmuch as it alleged that he [the plaintiff] had received great bodily injury; that he became and still continues sick, sore, and disabled; that he was prevented for a long time from attending to business, and was otherwise greatly injured"; and he points out that the allegations in the Kleiner Case differ from those in the Ehrgott Case in the following language:

"In this case [Kleiner] the allegations were unlike those in the Ehrgott Case, as the plaintiff particularly specified several injuries which she sustained by reason of the accident, and alleged that she thereby sustained permanent injuries; thus, in effect, limiting her permanent injuries to those previously alleged."

The allegation in the case at bar, to all intents and purposes, is the same as the allegation in the Ehrgott Case, and, that case having been approved in the Kleiner Case, it must be held that error was not committed in receiving the evidence objected to.   It is impossible to draw any substantial distinction between the allegations.

in the complaint in the case at bar and those which were contained in the Ehrgott Case, and, the decision in the Ehrgott Case having been expressly approved by the court of appeals in the Kleiner Case, which is, so far as we have been able to discover, the latest holding of that court upon that proposition, we are constrained to follow the Ehrgott Case, and to hold that the evidence objected to was properly received.

It is also urged that the evidence upon the question as to whether or not diabetes resulted from the accident was so speculative and uncertain that it should not have been left to the consideration of the jury. In the first place, it should be remembered that the defendant first proved that plaintiffs' testator was suffering from diabetes, and in that way sought to account for the very serious condition which he was in at the time of the trial, and the opinion of its experts was to the effect that this disease was not caused by the accident. On the other hand, the experts called by the plaintiffs gave it as their opinion that the disease was due to the injury which plaintiffs' testator received. They admitted that diabetes might have been produced by a large number of causes, and that they could not state positively that in this case it was due to the injuries received, but from all the conditions and circumstances, the fact that before the accident plaintiffs' testator was perfectly healthy and well, they expressed the opinion that the condition existing at the time of and prior to the trial was due to the injury, and that diabetes was caused thereby. Under the circumstances the jury was entitled to consider the evidence. The jury was instructed fully upon the proposition, and told that, before it allowed any damages because of such disease, it was incumbent upon the plaintiffs to satisfy them by a preponderance of evidence that such disease was caused by, or was the result of, the injury. The cases cited by appellant's counsel are not authority for a contrary holding in this case; certainly, the ruling of the court is supported by the decision in the case of Bowen v. Railroad Co., 89 Hun, 598, 35 N. Y. Supp. 542. In that case the court said:

"The plaintiff at the time of the accident was seventeen years of age, in vigorous health, and in good physical condition. His injury was apparently severe. It was followed by certain conditions of physical impairment. It was competent to prove that they are consequences which may be attributed to the injury, and, in view of the fact that such conditions have been the result, the medical opinion is relieved from any imputation that it was speculative."

In the case at bar the injured party, prior to the accident, was, so far as known, in perfectly sound health. He was a strong, robust, vigorous man. No other cause for his condition as it appeared at the time of the trial, other than the accident, was known or could be suggested. It was competent for the expert physicians to testify that such condition was, in their opinion, the result of the injury.

We have examined the exceptions taken by the defendant to the charge of the learned trial court and to the refusal to charge as requested, and conclude that none of them present error so prejudicial to the defendant as to require a reversal of the judgment.

'In our opinion, there is no foundation for the suggestion that the verdict in this case is excessive.

The views we have expressed lead to the conclusion that the judgment and order appealed from should be affirmed. Judgment and order affirmed, with costs.

ADAMS, P. J., and WILLIAMS, J., concur.

HISCOCK, J. I dissent. The trial justice was duly requested by defendant's counsel to charge "that, if the defendant made frequent and careful inspection of the work, as testified by defendant's witnesses, and if the bank appeared safe, and showed no danger of falling, then the defendant is not liable"; and, again, "that in determining that the place was safe to work in the defendant was justified in relying upon its appearance of safety, and the fact that the bank had stood for about a week without falling"; and, again, "that if the jury find that the earth was hard and solid, and showed no cracks or signs of falling, and had stood there for days, and was thereafter duly inspected, the defendant was not negligent." Each of the requests to so charge was refused, and I think thereby error was committed which was not avoided or cured by other portions of the charge.

SPRING, J. (dissenting). I think it was error for the court to permit the jury to consider as an element of damages the fact that plaintiff was suffering from diabetes, as such damages did not "necessarily and immediately flow from the injury," and are not, therefore, covered by the general allegations of the complaint setting forth the injuries sustained. Kleiner v. Railroad Co., 162 N. Y. 193–200, 56 N. E. 497; Lewin v. Railroad Co., decided by this court at the last preceding term (72 N. Y. Supp. 881), and the cases there cited. For this reason I dissent from the opinion of the court, and believe a new trial should be granted.