James A. Douglas, for appellant.
David B. Ogden, for respondent.

McLAUGHLIN, J. This appeal is from so much of an order as directs that the cause be placed on the general calendar for trial at Trial Term, and also placing the cause under its proper number on the first call calendar of causes taken from the general calendar after the entry of the order. The action is in ejectment. Both parties noticed the cause for trial at Special Term. The plaintiff subsequently moved that the case be stricken from the Special Term calendar and be sent to the Trial Term calendar. The motion was granted, and a provision was inserted in the order to the effect that the clerk place it upon the Trial Term calendar as of its date of issue, and that he place it on the first call calendar called thereafter; and it is from this provision of the order that the plaintiff has appealed.

The provision of the order appealed from was made without authority, and contrary to the rules of practice. Under section 977 of the Code of Civil Procedure a cause cannot be placed on the general calendar for trial until a notice of trial has been served and note of issue filed. Here no notice of trial has been served or note of issue filed for the Trial Term, nor does the order contain any provision for the service of such notice or the filing of such note of issue. The provision, therefore, directing the clerk to place the cause on the Trial Term calendar as of its date of issue, and that he place it on the first call calendar thereafter, was not authorized by any of the provisions of the Code of Civil Procedure or rules of practice relating to this district. Haskin v. Murray, 29 App. Div. 370, 51 N. Y. Supp. 542; Veinstok v. Veinstok, 63 App. Div. 16, 71 N. Y. Supp. 195.

So much of the order, therefore, as is appealed from must be reversed, with $10 costs and disbursements. All concur.

---

### WOOD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. RAILROADS—CROSSING—INJURIES RECEIVED IN AVERTING ACCIDENT.

    Plaintiff was about to drive over a railroad at a crossing, when an engine suddenly came upon him, without warning, from a direction in which his view was obstructed. To avoid a collision, plaintiff pulled his horse back with a jerk; and it, becoming unmanageable, started down parallel tracks, causing plaintiff to be thrown about in the buggy and injured. *Held*, that the injuries thus received were sufficient to form a basis for a recovery in an action against the railroad.

2. INJURIES—DISEASE—PROXIMATE CAUSE—DAMAGES.

    Where the proximate cause of a disease was an injury received in an accident, such disease could be considered as an element of the damages for which a recovery could be had, even though it was not discovered until some time after the accident.

Appeal from Trial Term, Steuben County.

Action by W. P. Wood against the New York Central & Hudson River Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed.

¶ 2. See Damages, vol. 15, Cent. Dig. § 41.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Francis E. Wood, for appellant.
Frederick Collin, for respondent.

SPRING, J. On the 26th day of April, 1902, the plaintiff—a young man, 21 years of age—was riding in a buggy with his father along Chestnut street, in the city of Corning. The buggy was drawn by one horse, which the plaintiff was driving, and which was owned by him, and was steady and gentle. The defendant's tracks, five in number, cross Chestnut street, and the view of a train approaching from the west is cut off to a traveler going south along this street. On the day in question there were cabooses on the two northerly lines of track, numbered 1 and 2, and these cabooses came closely to the sidewalk on the west side of the street. The plaintiff and his father, as they approached the crossing, observed the gates were down, and a freight train was going east. After this passed, the gates were raised, and the plaintiff drove along until his horse was upon track 3, when an engine upon the same track, and which gave no signal of its approach, and was concealed from the view of the occupants of the buggy, came toward them. Mr. Wood, Sr., thus described the occurrence, including the efforts to avoid a collision:

' "We drove on to the track, and as we drove by the cabooses the mare stepped over on the other track, and there was an engine come right spat upon Will and I, and he jerked the mare back and throwed her to one side, and hollered, and she started down the track with him, and as she started he fell over. He went forward right on my side. After he went forward on my side, he was thrown back against the seat, and the mare went over the cross-walk, down around the rails, and circled around and came up next to the standard, right through over to the gashouse. * * * At the time my son was thrown back from his position over in my direction into the buggy, the horse made a spring. That is what throwed him back there. I have examined the seat of the buggy since then, in the corner he was sitting. Q. What was the condition of the seat? A. Broke the seat from the box. The seat was not broken before, and it was broken immediately afterwards, when I examined it."

He further testified that immediately, upon getting the horse stopped, the plaintiff spit blood freely, and this continued until after he reached home. The hemorrhages continued, and the physicians testified he has been growing progressively worse; that tubercular trouble developed, and the plaintiff at the time of the trial and for some time before was suffering from tuberculosis. Dr. Argue, the attending physician, attributed the injuries "to the muscular strain, and also the severe shock which he received when he fell back in the seat, and when he passed over the rough surface." Dr. Goff, the other physician, corroborated Dr. Argue; testifying:

"In my opinion, the hemorrhage was the result of the muscular exertion accompanied by the shock to the body, or jar to the body, by reason of the fall back against the seat, and the consequent jar or jam of the wagon in passing over the rough ground."

These witnesses agreed in saying the injury was not the result of fright.

· There is no claim that the proofs were not amply sufficient to require the submission to the jury of the defendant's negligence, and the freedom of the plaintiff from fault. The learned counsel for the respondent insists that as there was no physical contact with the engine, and the injuries resulted from the shock, the defendant is not liable; relying upon Mitchell v. Rochester Railway Co., 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604, and similar cases. In that case, while the plaintiff was about to board one of the cars of the defendant a horse car of the defendant approached so near that the plaintiff stood between the heads of the horses, and she was thereby frightened so that she became insensible, and serious illness, with a miscarriage, resulted. The Court of Appeals reversed the order of the General Term and Special Terms (28 N. Y. Supp. 1136; 25 N. Y. Supp. 744), and affirmed the nonsuit. It appeared unmistakably that the injuries were induced solely by fright, and there was no immediate personal injury. The doctrine of that case, as we understand it, rests upon two grounds: (1) That to allow a recovery for fright alone would open the door for speculation and uncertainty, ' and would be contrary to public policy. (2) The injuries in that case were not the proximate or natural result of the negligence complained of, but were "the result of an accidental and unusual combination of circumstances, which could not have been reasonably anticipated, and over which the defendant had no control, and hence her damages were too remote to justify a recovery in this action." Page 110, 151 N. Y., page 355, 45 N. E., 34 L. R. A. 781, 56 Am. St. Rep. 604. That case is not akin to the present one. We must eliminate any question of fright as an efficient cause of the injuries, for the physicians are distinct and explicit in not ascribing them to any such source, and assign good reasons for their belief. The shock due to the severe physical exertion, with the attendant rapid, jolting ride over the defendant's tracks, and the sudden impact with the buggy seat, is wholly disconnected from fright, and affords adequate cause for the injuries. As was said in Jones v. Brooklyn Heights R. Co., 23 App. Div. 141, 48 N. Y. Supp. 914, after referring to the Mitchell Case:

"An injury, however, sufficiently severe to produce a shock, or which in fact produces a shock, presents an entirely different question. Shock is not fright. The latter may be a producing cause of the former, and where it is the sole producing cause there can be no recovery; but when it is associated with actual injury it may be considered, and where the injury and the fright concur and result in producing shock, out of which arises damage, it is sufficient upon which to base a recovery."

Another potent distinction from the Mitchell Case is that the injuries resulted immediately from the shock, and the same manifestations of their existence have been continuous ever since.

When the plaintiff was sensible of the imminent peril confronting him, like any sane man he put forth his whole strength to avert the catastrophe. This not only was the involuntary impulse of a person in threatening danger, but it was the duty of the plaintiff to endeavor to avoid the collision. If, by error of judgment in this perilous situation, he had driven across the track, or turned his horse toward the

engine, and an actual collision had occurred, with consequent injuries to him, his right to recover therefor would be unquestionable. If, in his effort to avoid the calamity, the plaintiff had too suddenly jerked his horse around, causing the buggy to be overturned, and he had been thrown out, and his leg broken, the defendant would have been liable. Twomley v. C., P., N. E. & R. R. Co., 69 N. Y. 158, 25 Am. Rep. 162. Because he exercised the wisest judgment, and averted the collision, but sustained injuries by reason of his extraordinary efforts in so doing, it is urged the injuries are not within the pale of those for which a recovery is permissible. The philosophy or logic to sustain this superfine distinction finds no warrant in good sense or authority. The shock to the plaintiff was due to a combination of circumstances. The tremendous physical strain, the jarring ride over the tracks, and the jolt against the seat, furnished tangible causes for the injury, and we are not left to conjecture as to their origin.

As already intimated the plaintiff's decline has been substantially uninterrupted, until consumption has supervened, ascribable to the shock, and the other features of the accident, already mentioned, as the physicians testified. It is contended strenuously that the consumption is not the natural or proximate result of the injuries, and consequently that disease may not be taken into consideration in estimating the damages. We are not now called upon to decide that specific question, as, upon a new trial, with all the evidence in, the case may be entirely different, in this aspect of it. We assume, however, if there is a progressive, complete connection between any disease and the injuries inflicted, such disease may be taken in estimation by the jury, as the plaintiff is entitled to recover for any damages which are the proximate result of the injuries. Ehrgott v. Mayor, etc., of N. Y., 96 N. Y. 264, 281, 48 Am. Rep. 622; Eichholz v. Niagara Falls H. P. & M. Co., 68 App. Div. 441, 73 N. Y. Supp. 842; Tait v. Buffalo Ry. Co., 55 App. Div. 507, 67 N. Y. Supp. 403; Purcell v. Lauer, 14 App. Div. 33, 43 N. Y. Supp. 988; Hurley v. N. Y. Brooklyn Brewing Co., 13 App. Div. 167, 43 N. Y. Supp. 259; Turner v. Nassau Electric R. Co., 41 App. Div. 213, 58 N. Y. Supp. 490. It is a matter to be determined by the jury, and the causal connection between the injuries and the existing disease must depend in a considerable degree upon the evidence of physicians. The right to embrace in the recovery damages for an existing disease may not be lost by reason of the length of time which has elapsed between its discovery or inception and the infliction of the original injuries, nor upon the character of the disease. The fact may be established that the disease was the result of the injuries; that the association of the two is by a direct line; and their connection is not to be based upon conjecture or speculation. If their unbroken connection is thus demonstrated, then the plaintiff's cause of action may include the disease. The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed and new trial granted, with costs to the appellant to abide the event. All concur.