JOSEPH BEAUCHAMP, ADM'R V. SAGINAW MINING CO.

*Negligence—Fatal injury from mining blast—Accident on private thorough-fare—Due precautions—Secondary causes.*

A boy was struck on the head by a stone thrown in a mining blast. *Held* that in an action for the injury it was not clearly error to allow the testimony of witnesses that they had not heard any warning before the blast was fired, even though there was positive testimony that such warning had been given.

In an action for injury from a mining blast the questions, whether any notice was given before the blast was fired, and if so, whether it was sufficient, are questions of fact; and if there is any conflict in the evidence it must go to the jury.

The errors of a jury in passing upon facts are not open to review in the Supreme Court; the remedy therefor, if any, is by motion in the trial court for a new trial or to set aside the verdict.

An injury from a mining blast to a person passing along a thoroughfare on the premises of the mining company is not excused by the fact that the road is not a public highway, if the company had opened it for the convenience of all persons who had occasion to use it.

A mutual understanding between adjoining mining companies that each, in blasting, may throw rock upon the other's premises will be no defense to an action for injury to a person rightfully on such premises.

Error cannot be based upon the legal positions taken in the arguments of counsel unless the trial court adopted them.

In an action for negligent injury resulting from the lack of due precautions in the conduct of one's business, defendant cannot be permitted to answer that the profits on the business are not sufficient to warrant taking them. And the question as to the necessity for the precautions is for the jury. So *held* where it was a question whether in blasting in an open mine, the pit ought not to be covered before firing the blast.

Where, in an action for fatal injury, it becomes a question whether death resulted from the injury or from some disease with which it had become involved, the party causing the injury cannot escape full liability without showing that death must have resulted if the injury had not been done.

Error to Marquette.   (Grant, J.)   Jan. 17.—Feb. 27.

Case.   Defendant brings error.   Affirmed.

*G. W. Hayden* for appellant.   One who has a right to the use of the land where he is carrying on a dangerous business has a right to prosecute it without hindrance from any person who, by reason of the conduct of such business, is licensed to approach or come upon the land used for such purpose : *Sutton v. N. Y. C. & H. R. R.* 66 N. Y. 243 ; 1 Thomp. Neg. 453 ; *Nicholson v. Erie Ry.* 41 N. Y. 530 ; if witnesses for a party complaining of an injury swear simply that they heard no warning but give no special reason for not hearing, and defendant's witnesses swear positively that warning was given, there is nothing to go to the jury : *Culhane v. N. Y. C. & H. R. R.* 60 N. Y. 133 ; *McGrath v. N. Y. C. & H. R. R.* 63 N. Y. 522 ; one cannot recover as for fatal injury unless the death was the natural and proximate result of the acts proved : *Wagner v. Woolsey* 1 Heisk. 235 ; *Baltimore &c. R. R. v. Trainor* 33 Md. 542 ; *Sherman v. Western Stage Co.* 24 Ia. 515 ; *McLean v. Burbank* 11 Minn. 277 ; *Sauter v. N. Y. C. & H. R. R.* 66 N. Y. 50 ; *Marble v. City of Worcester* 4 Gray 395 ; *Railroad v. Reeves* 10 Wall 176.

*E. E. Osborn* for appellee.   A mining company has no right to blast so as to injure persons who owe it no duty and who are where they have a right to be, on a road passing over land belonging to another company : *Hay v. Cohoes Co.* 2 N. Y. 159 ; *Tremain v. Cohoes Co.* id. 163 ; *Pack v. Mayor* 3 N. Y. 489 : 8 N. Y. 222 ; *Hunter v. Farren* 127 Mass. 481 ; *McCafferty v. R. R. Co.* 61 N. Y. 187 ; it owes it at least to one who is on its land under an implied license, to look and see if persons are near, and if so, warn them, and the question of notice is for the jury : *Driscoll v. Newark &c. Co.* 37 N. Y. 637 ; *Nicholson v. Erie &c. Co.* 41 N. Y. 525 ; *Corby v. Hill* 4 C. B. (N. S.) 556 : *Hardcastle v. South Yorkshire &c. Co.* 4 H. & N. 67 ; the act, being dangerous, is culpable if it did not take all the care which prudent circumspection would suggest to avoid the injury : *McGrew v. Stone* 53 Penn. St. 442 ;

negligence is to be presumed from the happening of the accident in the manner it did in this case : *Byrne v. Boadle* 2 H. & C. 722; *Scott v. London Dock Co.* 3 id. 596; the blasting of rocks sufficiently near the dwellings of others to endanger them is a nuisance : Cooley on Torts 608; *Scott v. Bay* 3 Md. 431; and an indictment for so doing will lie : *Reg v. Mutters* 10 Cox Crim. Cas. 6.

MARSTON, J. This was an action of trespass on the case brought to recover damages for the death of the intestate, caused by the alleged negligence of the defendant.

To properly understand the questions raised a brief reference to the facts will be necessary.

The Saginaw Company and the Stephenson Company were the owners of adjoining tracts of land upon which there was a vein of iron ore. These companies commenced mining upon their respective lands, and near to the division line, the defendant opening its mine within a very few feet of the line. These mines, at the time of the injury complained of, were known and worked as open mines; that of the defendant being down about thirty-five feet below the surface of the ground.

The Stephenson Company had given to its employees and others permission to erect and occupy dwelling-houses upon its land, and the defendant had given like permission to its employees to build upon its land. Under such authority a number of houses had been erected at varying distances from the mines, and the plaintiff, who was working for the Stephenson Company, had erected a dwelling upon its lands. With the permission of the last-named company, a building had been erected near the division line, and a stock of merchandise kept therein for sale, and at this place the miners and their families did a good share of their trading. The lands of these companies had not been fully cleared of their timber. There was no regularly laid out or opened street or highway across these lands, but there was a track or way across the Stephenson Company's lands used by the miners and others, and also used by parties going between their houses and the store referred to.

On the 16th day of January, 1880, the plaintiff's son, then sixteen years of age, had been to the store and was returning home, along the road referred to, when he was struck on the side of his head by a stone which seriously injured him, and from the effects of which it was claimed he died some months afterwards. When struck he was about five hundred feet from the defendant's mine, and it was claimed that the stone that struck him came from the mine of the defendant, a blast having been fired at that time.

The negligence charged in the declaration was, that the defendant did not protect or cover the place in which the blast was fired, and did not give any sufficient warning of the blast to be fired.

The principal matters of defense were, that the evidence did show that notice of the blast was given by the defendant ; that it was not therefore guilty of negligence and upon this ground the case should have been taken from the jury; that such an open mine could not be covered when blasting and carried on profitably, therefore the defendant could be guilty of no negligence in not covering it ; that death was not caused by the injury, but by specific or typical pneumonia ; and they also offered to show that a mutual agreement was entered into between these companies, previous to the accident, by which each might in blasting throw rocks upon the land of the other, the mines being so near the division line that there was no means of preventing such a result. This evidence so offered was objected to and excluded. These are the main questions relied upon.

There was direct evidence in the case that a warning was given in the usual and customary manner before the blast was fired, and witnesses testified that they did not hear any warning although within hearing distance at the time. Under such circumstances while we might fairly suppose that a jury would believe testimony of a positive rather than that of a negative character, yet so many other considerations enter into the inquiry as to whether a sufficient warning was given or not, that it would be unsafe, as a general

rule, for the court to withdraw such a question from the consideration of the jury. The relative positions of the several witnesses, the manner in which they were engaged at the time, their apparent interest or bias, their appearance upon the stand, these and other matters require attention and deliberation, and where the trial judge declines to take the case from the jury, the case should be an exceeding clear one that would justify this Court in finding error. The question whether any and if so a sufficient notice was given was one of fact, upon which the evidence, though perhaps weak upon one side, was conflicting, thus bringing it clearly within the proper province of the jury to pass upon. If any error was committed by the jury, the remedy is not in this Court, but in the court below upon a motion for a new trial, or to set aside the verdict.

The objections relating to the evidence offered and rejected,—to the duty of the defendant to cover its mine when blasting,—and to give sufficient warning, may be considered together.

Under the privileges extended by the Stephenson and defendant companies to their employees, the latter had a clear right to build their houses, and they, with the several members of their respective families, to travel in and upon the road in question in the usual and customary manner to and from the store and wherever their business may have required them to go.

The fact that the way in question was not a legally laid out or opened public highway is of no importance in the present case. With the permission of the owners of the land, the people had been in the habit of using this as they would a public highway, and this was known to the defendant. The deceased was not therefore a trespasser; he was not in the wrong, at the time he received the injury, but was traveling on the road in question on business and as a matter of right. There is no middle ground in such a case, dependent upon the nature of the highway; if the way had been a public highway or a crowded thoroughfare, greater care might have been required of the defendant, but the

rights of travelers thereon in either case would be the same. They would be rightfully there and could be charged with no illegality or negligence in traveling thereon upon business or pleasure. The injury cannot therefore be traced to any breach of the law or wrong on the part of the deceased, but solely to the fault of the defendant, if either was in fault.

It was very strongly insisted upon in this Court, that counsel in the court below claimed that the defendant had no right whatever to throw rocks from blasts in its mine upon the lands of the Stephenson Company,—that in so doing it was a trespasser, and that if a stone from its blast struck deceased, while upon the Stephenson lands, defendant would be liable as a trespasser at all events, regardless of the question of negligence,—citing in support thereof *Hay v. Cohoes Company* 2 N. Y. 159; *St. Peter v. Denison* 58 N. Y. 416; and *Jager v. Adams* 123 Mass. 27. It was claimed, therefore, that to meet the position so taken by counsel for plaintiff the defendant had a clear right to introduce the rejected testimony.

It must be borne in mind that this is not an action brought by the Stephenson Company to recover damages for stone thrown upon its land by the defendant. If this had been such an action the evidence might have been admissible. As however, the deceased was rightfully upon the road when injured, the Stephenson Company could not itself possess the right to willfully or carelessly endanger his life, nor could it give this right to another. And although the defendant may in the first instance have had authority to throw stones all over the Stephenson lands, yet when these persons acquired the right of travel thereon, or exercised that right with the permission of the owner of the land and the knowledge of the defendant, the rights of the latter thereby became restricted, and from henceforth they must carry on their business with such a degree of care as the public safety required.

The validity of a judgment cannot, however, be successfully assailed in this Court because of the erroneous legal

positions taken by counsel in the trial court, unless the
court adopts such erroneous views; and then it is the error
of the court and not of the counsel that works a reversal.
Any other view would render judgments of very un-
certain tenure. We must therefore look to the rulings and
charge of the court, and not to the arguments of counsel, in
order to ascertain whether any error was committed.

An examination of the record shows that the cause was
not submitted to the jury upon any such basis. The last
clause of the tenth paragraph of the charge is the only one
that would seem to give color to the position. When how-
ever we read the tenth, eleventh and twelfth paragraphs
of the charge, which we must do, as they relate to the same
subject, the difficulty disappears. The denial of the right
of the defendant to throw stone in blasting "upon the land
of others without permission at least of the other parties,"
as clearly appears by what follows, had reference to consent
not simply of the Stephenson Company, but the parties
who were in the rightful possession and who might be in-
jured thereby. As already said the Stephenson Company
could give no permission that would injuriously affect the
rights of the deceased. Taking these parts of the charge
and viewing them as a whole the court recognized the pos-
sessory rights of these occupants to dwell in their houses
and to travel over this road; that while thus permitted to
enjoy these rights, their lives could not be endangered by
the carelessness of the defendants ; that if, in order to pro-
tect them, "ordinary prudence and caution would have
required the defendant to cover and protect the place from
which the blasts were to be fired so that rocks should not be
thrown out by its blasts upon places where other people had
a right to be, then the defendant was bound to cover or
protect the place   *   *   *   notwithstanding it involved a
greater expense on the part of the defendant in so doing."
The case was not therefore submitted to the jury upon the
theory that defendant in throwing or permitting the rocks
to be thrown upon the Stephenson lands was thereby guilty
of a trespass and as such liable at all events regardless of the

question of negligence. ' The fourteenth paragraph of the charge makes this very clear, in charging that if there was danger that the defendant in firing its blasts would throw its rock beyond its own location, and upon other places where the defendant had a right to be, then it was their duty to give notice of its blasts to all those who were where they had a right to be, and failure so to do would constitute negligence rendering it liable, if there was no contributory negligence on the part of the deceased.

The case was therefore submitted to the jury to find, not whether defendant was a trespasser and liable as such, but whether it had been guilty of negligence, either by not covering the pit when blasting or in not giving sufficient warning.

It was argued that to require defendant to cover the pit when blasting would be so expensive, that mining could not be carried on profitably, therefore impracticable; that the law encourages mining, and would not require conditions that would prevent it being carried on except at a loss to the company.

The law undoubtedly aims to encourage the successful prosecution of business enterprises. It at the same time, with a due regard for the lives and protection of others, requires that certain safeguards be observed in the conduct and management thereof.

It is the duty of the master to remove known perils; he must provide safe machinery, employ suitable servants and must not subject them to unknown dangers or send them into dangerous places.

The owner of real estate must exercise ordinary care and vigilance in the use thereof, to prevent injury to persons having lawful right to be on or near the same. He cannot erect buildings in an insecure manner; or negligently permit unsafe walls to remain standing in an exposed place to endanger persons passing along the streets; or leave unguarded openings in his buildings where parties entering on business may be injured. If he does, the law holds him

responsible, as he is bound to so control the use of his premises as not to produce injury to others.

In like manner railway companies may at certain places on their roads run at a high rate of speed, yet in entering and running through villages and cities, and when approaching certain crossings, a different rate must ordinarily be observed. They may also be required to station and maintain flagmen at certain points, and to erect bridges across streets and highways where the public safety seems to require it.

So where mining companies own the land where they have opened their mine, and contiguous thereto, they may conduct their operations with apparently very much less care than they could where the surface of the land over the mine was in the actual occupation of others; or where third parties were in the actual enjoyment of lands near to the mine; or a highway run close to the pit; or large numbers of people were in the habit of traveling near thereto by sufference of the owners of the land. What at a given time and place might be done with almost absolute safety, so that slight care would be deemed sufficient, would, if done in the same way, under other circumstances, be held gross if not criminal negligence.

In none of these cases where negligence is alleged and proved, could the answer be admitted, that the profits of the business carried on would not justify the extra expense. It is not the matter of profit or loss that determines or enters into the question of care or negligence, but rather that of danger to the public or third persons. Were it otherwise an insolvent corporation would be comparatively safe, and an almost worthless mine might be carried on with an utter disregard of the rights and safety of others. If mining at a particular place cannot be profitably carried on, and at the same time the rights of third parties be respected and protected, then it must be carried on at a loss or abandoned.

Whether a covering was practicable in the present case, and necessary, was we think fairly and properly submitted to the jury.

The next position relied upon is that the death of Beauchamp was not the natural and proximate result of the injury received, but was caused by active pneumonia.

The charge as given upon this part of the case is not and could not be questioned, if under the evidence the question was proper to be submitted to the jury at all. It is claimed by the defendant that it should not have been, and upon this point the case should have been taken from the jury.

We may well adopt what was said in *Baltimore & P. R. R. v. Reaney* 42 Md. 117. Where after speaking of cases where two or more independent causes concur in producing an effect and it cannot be determined which was the efficient and controlling cause—or whether without the concurrence of both the event would have happened at all—the court added: " But it is equally true, that no wrong-doer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defence, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act. To entitle such party to exemption, he must show not only that the same loss *might* have happened, but that it *must* have happened if the act complained of had not been done. *Davis v. Garrett* 6 Bing. 716."

This case would seem to come clearly within the third rule laid down by Mr. Justice Cooley in his work upon Torts, p. 70, where the authorities are very fully collected : "If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent."

In the present case the physician who attended the boy was called as a witness by the defendant, and on direct examination testified that " he died of pneumonia." That at the time he was seized with pneumonia he was doing tolerably well; after the injury he went on improving slightly

up to the time he had pneumonia. On cross-examination the physician further testified that, when first called, he found that the boy had received a compound fracture of the skull; that he then appeared to be a good, healthy, well-nourished boy; that he was insensible and remained so until the next day, when the depressed portion of the brain was raised and a number of pieces of bone taken out; that there was a mass appeared subsequently protruding from the hole, which grew to be about the size of an English walnut; it was a fungus of the brain, and was removed; that he expected the boy to recover, and from the fact that he lived five or six months he had some hopes of a recovery. He also testified that there was complete paralysis of the right side, which continued some time; that the boy had some movement of his right side before his death, but had not completely recovered the use of his limbs; that his tongue was at first paralyzed, but he afterwards so far recovered the use thereof as to be able to say yes and no. He also testified: "I think he might have got well. Of course it was a serious injury, the chances were against his getting well, and yet the chances were that he might ultimately recover. The chances were against his recovery, and yet there were chances for his recovery. I would put the chances for his recovery in the minority." Again: "I found him suffering from shortness of breath; I ascertained from his parents that he had a chill, followed by a cough and pain in his side." "As to the cause of this particular variety of pneumonia it is sometimes due to exposure to cold, living in a vitiated atmosphere, overcrowded. * * * This boy was exposed to cold the same as we all are, more or less; he was in a sick room, but they had some ventilation in there, I know, at my request. * * * I am unprepared to say what caused pneumonia in his case. * * * In my opinion it was a specific or typical pneumonia; the relation between it and the injured head were not close."

Farther evidence similar to the above was given, but sufficient has been quoted to show the character thereof and

the above is as favorable to the defendant's position as the case will permit.

Is it clear beyond dispute, that the cold taken, pneumonia and death were independent and separate from the injury received and sickness resulting therefrom? Can it be said with judicial certainty that the injury, the sickness and weakness following therefrom, did not directly cause or largely contribute to the attack of pneumonia, and that the party wrongfully injured was as able to withstand this resultant attack as he would have been if "a good, healthy, well-nourished boy" as at the time he received the injury? If the injury received and sickness following concurred in and contributed to the attack of pneumonia, the defendant must be held responsible therefor. It cannot be said that here was a second wrongful act, or a disease, wholly independent of the first wrong, which caused the death of the boy. *People v. Cook* 39 Mich. 239.

We have examined the other assignments and discover no error therein.

The judgment will be affirmed with costs.

GRAVES, C. J. and COOLEY, J. concurred.