[S. F. No. 9145. In Bank.—November 8, 1919.]

## BETHLEHEM SHIPBUILDING CORPORATION, LTD., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—DEATH FROM FACIAL INFECTION—TRANSMISSION FROM INFECTED TOE—FINDING OF COMMISSION—SUPPORT BY TESTIMONY OF MEDICAL EXPERTS.—On *certiorari* to review an award of compensation by the Industrial Accident Commission, the finding that a streptococcic infection of an injured toe was carried from the toe to the face by external means and that death was proximately caused by the original injury, cannot, in view of section 1826 of the Code of Civil Procedure, be overturned, where based upon the testimony of medical experts in the light of medical science.

[2] ID.—DEATH FROM ORIGINAL INJURY—CHAIN OF CAUSATION NOT BROKEN.—In the light of medical knowledge that the transfer of a streptococcic infection from a discharging wound is not only possible but highly probable, the fact that the germs reached the face by external means and not through the system cannot, as a matter of law, be said in itself to have broken the chain of causation, so that the death was not proximately caused by the original injury.

[3] ID.—TREATMENT OF INJURY—CONDUCT OF EMPLOYEE—ENHANCEMENT OF INJURY—FINDING AS TO CAUSE OF DEATH—RIGHT OF COMMISSION.—Where an injured employee conducted himself in treating the injury, as would a reasonably prudent person in his situation

and circumstances, and innocently enhanced the injury, it was within the province of the commission to find that the original cause continued to the end and accomplished the final result, and was, therefore, the proximate cause of death.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission.   Affirmed.

The facts are stated in the opinion of the court.

Wilson & Wilson for Petitioner.

A. E. Graupner, Maurice T. Dooling, Jr., and F. A. Devlin for Respondents.

LENNON, J.—*Certiorari* directed to the Industrial Accident Commission.   The return of the respondent commission reveals the following facts:

The proceeding was instituted by an application for benefits under the Workmen's Compensation Act, (Stats. 1917, p. 831), presented by the guardian *ad litem* and trustee of the incompetent wife and minor child of John Caffrey, deceased, whose death was alleged to have been caused by an injury received in the course of his employment and arising out of the employment.   It appears that on Friday, July 26, 1918, Caffrey sustained a contused wound on the great toe of his right foot while engaged in the service of the petitioner.   He continued at his work on Saturday and also on the following Monday.   On Monday he had the toe dressed by Dr. Marvin at the emergency hospital of the Union Iron Works.   On Tuesday, July 30th, the foot was so painful that after starting to work he returned home and undertook to treat the toe himself.   He first complained of a swelling of the face on August 1st. On the following day, the symptoms of the face becoming alarming, Caffrey was removed to a hospital, where it was discovered that there was a streptococcic infection of the injured toe.   The skin surrounding the toe was in an erysipelatous condition and there was a development of erysipelas on the face.   The facial infection resulted in septicemia, from which Caffrey died on August 8, 1918.

The commission found that the germs which caused the facial infection were carried from the toe to the face by

external means and that Caffrey's death was proximately caused by the original injury. It is contended on behalf of petitioner that these findings are not justified by the evidence.

The medical testimony upon which the commission based its finding that the germs which caused the facial infection were carried from the toe to the face by external means was, in effect, that such a method of transfer was exceedingly common, the transmission of the germs being very readily accomplished, that there was no reason to suppose that the infection had come from another source than the toe, and that, while it was within the realm of possibility for the infection to have come from another source, such hypothesis was so very much the least probable that it seemed useless to theorize as to such possibility in the face of facts indicating that the germs "certainly must have been carried" from the foot.

[1] It is contended on behalf of petitioner that this evidence shows that the opinion of the experts that the infection of the face was due to germs carried from the toe was pure "guess-work." The testimony shows, however, that the experts were not indulging in mere conjecture or speculation. They were giving what, on the facts before them, and in the light of medical science, appeared to be the most probable explanation of the event. The theory that germs were carried from the toe to the face was "guess-work" only in the sense that there was no direct evidence of the source of the facial infection. In the view of the experts, other admittedly possible causes were so far excluded by the conditions which were shown as to make the one which they advanced by far the more probable one. As stated in *Santa* v. *Industrial Acc. Com.,* 175 Cal. 235, [165 Pac. 689], "This was a sufficient basis for the action of the Commission. Absolute proof or mathematical demonstration is not required. (Code Civ. Proc., sec. 1826.) The commission is the final judge of the facts, and its findings cannot be overturned where they have the support of evidence upon which a reasonable man could come to the conclusion which was reached."

Petitioner, however, insists that, even if it be assumed that the facial infection was caused by germs carried from the toe by external means, the chain of causation was so

broken that the original injury of the toe could not reasonably be said to have been the proximate cause of Caffrey's death. The rule of law which must guide us in the determination of the question thus presented is stated in *Head Drilling Co.* v. *Industrial Acc. Com.,* 177 Cal. 194, [170 Pac. 157]. In that case it appeared that a workman sustained a fracture of the leg in the course of his employment. Three days after his discharge from the hospital, he sustained a second injury, causing a displacement of the bones by reason of accidentally striking the heel of the foot of the injured limb against a piece of furniture. The chief justice said: "We are of the opinion that a subsequent incident or accident aggravating the original injury may be of such a nature, and occur under such circumstances, as to make such aggravation the proximate and natural result of the original injury. Whether the subsequent incident or accident is such or should be regarded as an independent, intervening cause is a question of fact for the commission, to be decided in view of all the circumstances, and its conclusion must be sustained by courts whenever there is any reasonable theory evidenced by the record on which the conclusion can be upheld. . . . Our conclusion is not at all opposed, in our opinion, to what is said in *Pacific Coast Casualty Co.* v. *Pillsbury,* 171 Cal. 319, [153 Pac. 24]. The question there was whether the commission is authorized by the act to award compensation to the employee 'for an additional injury sustained by him afterward, not in the course of his employment, by an accident or act which aggravates the first injury and prolongs the disability.' The answer was that it had no such authority if the subsequent injury 'is neither the natural nor the proximate result of the injury received in the course of the employment.' It was fully recognized in that case, we think, that the subsequent injury may be the proximate result of the injury received in the course of the employment, and compensable under the act, and the finding to that effect in this matter has sufficient support in the evidence." In a concurring opinion in that case, Mr. Justice Shaw added that "the award for the further disability here under review can be sustained only upon the ground that the subsequent accident and resulting displacement of the fractured bone was not the result of a lack of ordinary care on the part of the

injured employee. An injury so occurring subsequently may be regarded as a part of the proximate consequences of the original accident. The finding of the commission is in effect a finding that at the time of the second accident Scott was not guilty of a lack of the ordinary care which reasonably prudent persons in his condition exercise for their own safety from injury. I think it cannot be said, as a matter of law, that such finding is without evidence to support it.''

The rule announced in *Head Drilling Co.* v. *Industrial Acc. Com., supra,* is well established in all cases where it becomes necessary to determine whether or not there is evidence to justify a finding that a subsequent injury or disease is part of the proximate consequences of an injury for which the defendant is responsible. In *Dickson* v. *Hollister,* 123 Pa. St. 421, [10 Am. St. Rep. 533, 16 Atl. 484], erysipelas followed a flesh wound received in the course of a fall occasioned by the defendant's negligence. At the time of the decision, the causes of erysipelas were not understood, but the mere fact that it frequently developed from personal injuries was held to warrant an instruction that the disease might be regarded by the jury as part of the injury itself. To the same effect is *Houston & T. C. Ry. Co.* v. *Leslie,* 57 Tex. 83, 85. The reluctance of the courts to determine the question of proximate cause as a matter of law in cases similar to the instant case is illustrated by *Baltimore City Passenger Ry. Co. v. Kemp,* 61 Md. 619, [48 Am. Rep. 134], wherein it was held that it was properly left to the jury to determine whether or not a supervening cancerous growth was caused by injuries sustained by plaintiff, as a result of defendant's negligence. The evidence in this behalf was to the effect that the personal injury might have superinduced and contributed to the production and development of the cancer. The court quoted with approval from *Beauchamp* v. *Saginaw Mining Co.,* 50 Mich. 163, [45 Am. Rep. 30, 15 N. W. 65], wherein it was held that it was for the jury to determine whether or not a blow on the head was a proximate cause of death from pneumonia, the evidence being to the effect that the personal injury had so reduced the vitality of the deceased as to render him more susceptible to disease and less able to resist it. See, also, *Pyke* v.

*Jamestown,* 15 N. D. 157, [107 N. W. 359]; *Terre Haute etc. Co.* v. *Buck,* 96 Ind. 346, [49 Am. Rep. 168]; *Eichholz* v. *Niagara etc. Co.,* 68 App. Div. 441, [73 N. Y. Supp. 842]; Id, 174 N. Y. 519, [66 N. E. 1107]; *Louisville & N. R. Co.* v. *Jones,* 83 Ala. 376, [3 South. 902.]

[2]   It only remains to apply the above reasoning to the facts of the instant case.  In the light of medical knowledge properly presented to the commission that such a transfer of a streptococcic infection from a discharging wound as that found to have taken place in Caffrey's case is not only possible, but highly probable, we are of the opinion that the fact that the germs reached the face by external means and not through the system cannot, as a matter of law, be said in itself to have broken the chain of causation.  But petitioner contends that Caffrey's conduct was such as to require a finding of negligence on his part.  Caffrey was, of course, under a duty to use reasonable care to restore himself to health. [3]  But if he conducted himself as would a reasonably prudent person in his situation and circumstances, and innocently enhanced the original injury, it was within the province of the commission to find that the original cause continued to the end and accomplished the final result, and was, therefore, the proximate cause.  (*Dunham* v. *Clare* [1902], 2 K. B. 292; *Hodgson* v. *Robins,* 7 B. W. C. C. 232, 233; *Bailey* v. *Industrial Com.,* 286 Ill. 623, [122 N. E. 107]; *Hope* v. *Troy etc. R. Co.,* 40 Hun (N. Y.), 438, 440; *Batton* v. *Public Service Corp.,* 75 N. J. L. 857, [127 Am. St. Rep. 855, 18 L. R. A. (N. S.) 640, 69 Atl. 164].)  Under all of the circumstances, we are not prepared to say that the commission was not justified in the instant case in finding that his original injury was the proximate cause of Caffrey's death.

It appears that when the toe first troubled him, Caffrey had it dressed by Dr. Marvin at the emergency hospital at the ship-building plant.  When called as a witness, the doctor did not recollect the case, but the hospital record as explained by him indicated that the toe was not in a very serious condition, that Caffrey was given no special warning, and that he was told to go to another hospital in a day or two when the dressing needed to be changed.  The next day he started to work, but, on account of the pain in the foot, he returned home.  He might have had free treatment

at the hospital maintained by petitioner for its employees, but he chose instead to remain at home and treat the foot himself with witch hazel and iodine. In the light of subsequent events, this was an unfortunate decision. We are, however, unable to say as a matter of law that the commission was bound to find that, under all the circumstances appearing at the time, it was a decision so unreasonable and imprudent as to amount to a breach of his duty to use due care to restore himself to health. There is no further fact in the case upon which negligence can be predicated. It is not suggested that Caffrey failed to use due care in his own treatment of the foot. It was not until the third day of his absence from work that he first noted a swelling of the face, which he at that time attributed to a cold in the head. The toe, however, was improving, and he wrote to his foreman on that day that he was a little better and that he would try to return to work as soon as possible. Serious symptoms first developed on the face on the following day and without further delay he was removed to a hospital for treatment.

The facts of the case are not such as to warrant the conclusion that the commission was bound to find that the transfer of the germs from Caffrey's toe to his face was due to his own negligence. It follows that we cannot disturb the finding that his death was the natural consequence of the original injury.

The award is affirmed.

Wilbur, J., Melvin, J., Lawlor, J., Olney, J., and Angellotti C. J., concurred.

SHAW, J., Dissenting.—I dissent. Caffrey, while at work for his employer, had an accident which abraded the skin of his toe. From that abrasion natural causes which he could not control brought on an infection in the toe. The infection and consequent diseased condition of the toe were the proximate results of the abrasion and of the accident. But the infection did not reach his face by the operation of natural causes. The commission so found. It reached the face by being subsequently carried there, either from some other source, or by some agency entirely disconnected with the infected condition of the toe, or by his own act in

carelessly or accidentally touching his face with something which had been in contact with the infection in the toe. Any one of these causes would be an independent intervening cause and not a cause arising proximately from the injury.

It makes no difference, with respect to this question, whether the act of Caffrey which carried the infection to his face, if it was so carried, was negligent or merely accidental; in either event it was a cause independent of the original injury and intervening it and the deposit of the infection on the face. The opinion of the majority appears to assume that an act of the injured person cannot be an independent intervening cause unless it is a negligent act. This, of course, cannot be correct. The question whether or not it is negligent has no place in an inquiry whether or not it is an independent intervening cause.

The decision and the reasons therefor stated in *Head Drilling Co. v. Industrial Acc. Com.,* 177 Cal. 194, [170 Pac. 157], are not applicable to the present case. The facts were materially different. There the injured person, Scott, had a fracture of the leg. He was put in the care of a physician engaged by the insurance carrier of the employer. He had been discharged from the hospital, but was still acting under the supervision of the physician and had been directed by him to begin to use the fractured leg. It was while he was obeying these instructions and in his usual habits of going about in his home, as the directions contemplated he should do, that his foot slipped on a rug. The leg, owing to the injury, was not yet capable of free motion. This caused an involuntary outward motion of that foot, which struck a table or chair near-by and brought about the additional injury for which the second award was made. There was, therefore, an unbroken chain of causation from the original injury to the second injury. The original injury was one of the direct causes of the second injury. Scott was following the advice of the physician to accelerate recovery and because of his doing so he received the second injury. In such cases it is always conceded that the second injury is not produced by an independent intervening cause. It may be an intervening cause, but is not an independent cause. In the case at bar the original injury had no connection whatever, natural or artificial, with the transmission

of the infection from the toe to the face. It was not directly or indirectly the result of treatment or advice of the physicians in charge of the case, nor the necessary or natural result of the infection in the toe. For these reasons I am of the opinion that the employer was not liable for the additional award.