[Civ. No. 8904. First Appellate District, Division One.—January 28, 1935.]

CYNTHIA M. SHAW, Respondent, v. THE OWL DRUG CO. (a Corporation) et al., Appellants.

Jesse H. Steinhart, John J. Goldberg, Hartley F. Peart, Gus L. Baraty and Russell Shearer for Appellants.

Ford & Johnson and David A. Fall for Respondent.

KNIGHT, J.—This is an action for damages on account of personal injuries plaintiff claims to have sustained through the negligence of defendants. The jury returned a verdict in plaintiff's favor and defendants appealed from the judgment entered thereon.

The case grows out of a sidewalk accident which happened in San Francisco on December 4, 1930. On that day plaintiff was walking along the easterly side of Stockton Street, and just as she was crossing over the doors of a sidewalk elevator operated by the defendant drug company in connection with the basement of a building it was then occupying, the doors of the elevator were suddenly and without warning raised from below by the defendant Gerardo, an employee of said drug company, and thereby plaintiff was thrown violently to the pavement and severely injured. She suffered a severe sprain and tearing of the ligaments of the left ankle and left knee, a sprain of the

left hip and groin, and a particularly severe contusion of the left leg above the knee and over the outside of the left femur. The next day the entire leg was badly swollen and discolored from the hip to the ankle. She was confined to her bed, under the care of a nurse, for about six days, and thereafter, although suffering intense and constant pain in the leg, was able to get about with the aid of a cane. Immediately following the accident the employees of the drug company summoned Dr. Chapman to administer whatever medical and surgical treatment was necessary; and he continued to treat her until May, 1931, at which time he went away on a vacation. Dr. Parsons then took charge of the case, and every two or three days, sometimes oftener, plaintiff called at his office to receive treatments, including electrotherapeutic, heat and diathermy. These treatments continued until August 27, 1931. On that day and while plaintiff was still under the care of Dr. Parsons, her left leg collapsed without any apparent reason, and she fell to the floor. This happened in her apartment while she was walking from one room to another. Dr. Parsons was called at once and plaintiff was sent to the hospital. X-ray pictures were taken and they revealed an irregular fracture of the femur just above the knee at the particular site of the severe contusions suffered by plaintiff in the sidewalk accident. The pictures also disclosed a pathological condition of the bone, doubtless due to a metastatic carcinoma or secondary cancerous condition. The center of the bone at the exact point where the fracture occurred was rarefied—in a porous condition—and the diseased condition of the bone was unquestionably the immediate cause of the collapse of the leg. This second injury rendered plaintiff helpless. Since it happened she has not been able to walk at all, and can be moved about only on a stretcher; and she has been compelled to undergo a great deal of medical, surgical and hospital treatment. The jury awarded her $9,000 damages.

Defendants admit responsibility for the damages resulting from the injuries plaintiff sustained in the sidewalk accident; but they claimed at the trial, as here, that there was no evidence showing a causal connection between that accident and the collapse of the plaintiff's leg some eight months afterwards. In this regard it was contended that the diseased condition of the femur was neither precipitated

nor aggravated by the injuries received in the sidewalk accident, but was the natural sequence of a cancerous condition of the breast with which plaintiff had been previously afflicted. And in furtherance of such contention defendants moved the court to strike out all evidence relating to the fracture of the femur. The motion was denied; and later the court refused to instruct the jury as requested by defendants to disregard all such evidence. It is now contended on appeal that these rulings of the trial court were erroneous, and that consequently defendants were prejudiced thereby for the reason that the jury was allowed to take into consideration said subsequent injury in fixing the amount of damages.

On the other hand, plaintiff's position is that the trauma to the thigh resulting from the sidewalk accident precipitated the diseased condition of the femur at the site of the fracture, or aggravated a dormant diseased condition in plaintiff to such an extent that it caused the femur to rarefy at the point where the fracture occurred, and that consequently, in either event, the injuries received by plaintiff in the sidewalk accident on December 4, 1930, were the proximate cause of said fracture. The sole question presented for determination by the appeal is, therefore, whether there are any circumstances established by the evidence which reasonably construed may be said to support the implied finding of the jury and the conclusion reached by the trial court in ruling upon the motion for new trial that there was a causal connection between the two injuries. In our opinion there are.

As to the plaintiff's previous condition of health, the evidence shows that in 1926 she submitted to an operation for a cancerous growth on the breast; and that in April, 1930, she underwent a second operation for a recurrence of the same ailment, which at that time appeared to be affecting some of plaintiff's ribs. But the evidence also shows that during the eight months elapsing between the second operation and the date of the sidewalk accident plaintiff enjoyed good health. During that period she was actively and successfully engaged in the real estate business, and drove an automobile extensively. Furthermore, X-ray pictures taken of the leg on December 8, 1930, immediately following the sidewalk accident, showed no traces whatever of bone rarefaction; and about two months later other X-ray pictures were

taken and at that time the bones of the leg appeared normal, except there were same evidences of arthritis, which it was explained was common in persons of plaintiff's age; but as stated, on August 27, 1931, following the fracture of the leg, X-ray pictures revealed the abnormal condition of the bone above described; and medical testimony was introduced showing that metastatic carcinoma or secondary cancerous growth, such as was found present here, is usually precipitated by trauma or injury. As stated, up to the time of the sidewalk accident plaintiff was in good health; but never thereafter was her leg free from pain. Immediately following the accident Dr. Chapman bandaged the leg and called on plaintiff every day at her home during the several days she remained in bed, and thereafter, up to the time he went away, she was treated at his office. But just before the second pictures were taken she had a very bad spell and was compelled to go to bed again, and medicine was given to relieve the pain; and notwithstanding the continuous treatments administered by Dr. Parsons after he took charge of the case the pain in her leg kept growing gradually worse and eventually settled just above the knee where the fracture afterwards occurred. At times the pain was excruciating; and on the day the leg collapsed it was intense all through the leg from hip to ankle. Dr. Parsons stated that metastatic carcinoma—that is, the traveling of malignancy from one part of the body to another—may occur where primarily there is a cancer of an organ such as the breast, but that if it does, it develops usually where there has been trauma; that it takes its seat in some part of the body that has been injured or devitalized. And in this regard he went on to point out that the X-ray pictures taken after the fracture on August 27, 1931, besides showing the rarefaction of the center of the femur, disclosed that the periosteum or covering of the bone itself was inflamed, and that it evidently resulted from the external bruising of the leg. While he gave no definite, absolute opinion that the diseased condition of the femur at the point of fracture was precipitated by the injuries plaintiff received to the leg in the sidewalk accident, his entire testimony was such as to warrant such conclusion. Therefore, when it is considered with all the other circumstances established by the evidence, it is legally sufficient, in our opinion, to support the verdict. (*Ensign* v.

*Southern Pacific Co.,* 193 Cal. 311 [223 Pac. 953]; *White* v. *Red Mountain Fruit Co.,* 186 Cal. 335 [199 Pac. 318]; *Averdieck* v. *Barris,* 87 Cal. App. 626 [262 Pac. 423].) As said in *Bethlehem Shipbuilding Corp.* v. *Industrial Acc. Com.,* 181 Cal. 500 [185 Pac. 179, 7 A. L. R. 1180] : ''The reluctance of the courts to determine the question of proximate cause as a matter of law in cases similar to the instant case is illustrated by *Baltimore City Passenger Ry. Co.* v. *Kemp,* 61 Md. 619 [48 Am. Rep. 134], wherein it was held that it was properly left to the jury to determine whether or not a supervening cancerous growth was caused by injuries sustained by plaintiff as a result of defendant's negligence. The evidence in this behalf was to the effect that the personal injury might have superinduced and contributed to the production and development of the cancer. The court quoted with approval from *Beauchamp* v. *Saginaw Mining Co.,* 50 Mich. 163 [15 N. W. 65, 45 Am. Rep. 30], wherein it was held that it was for the jury to determine whether or not a blow on the head was a proximate cause of death from pneumonia, the evidence being to the effect that the personal injury had so reduced the vitality of the deceased as to render him more susceptible to disease and less able to resist it. (Citing a number of authorities.)''

Several other medical experts ventured opinions that the diseased condition of the femur did not have its origin in the injuries sustained in the sidewalk accident, and that it was the natural sequence of plaintiff's previous ailment. But at best their opinions raised merely a conflict; and as to what should be the true deduction from conflicting testimony is a problem for the jury and not the reviewing courts. (*Gambrel* v. *Duensing,* 127 Cal. App. 593 [16 Pac. (2d) 284].) In other words, the question of whether the subsequent injury was such or should be regarded as having its origin in an independent, intervening cause was a question of fact for the fact-finding body to decide from all the circumstances; and its conclusion must be sustained whenever there is, as here, any reasonable theory evidenced by the record on which its conclusion can be sustained. (*Bethlehem Shipbuilding Corp.* v. *Industrial Acc. Com., supra.*)

Accordingly the judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1935.