## NICOLACI v INDUSTRIAL COM.

Ohio Appeals, 1st Dist Hamilton Co

No 5287. Decided Oct. 11, 1937

Shook, Davies, Hoover & Beall, Cincinnati, for Appellee.

Herbert S. Duffy, Columbus, Eugene Carlin, Columbus, and Earl T. Wagner, Cincinnati, for Appellant.

## OPINION

By MATTHEWS J.

On appeal from the court of common pleas of Hamilton county, from an order of the Industrial Commission made on re-hearing, disallowing the claim of the dependents of Dominick Nicolaci for death benefits on account of his death, the court rendered judgment on the verdict in favor of the plaintiff.

The Industrial Commission appealed from that judgment to this court.

The only question involved is whether death resulted from an injury occasioned in the course of the employment. The evidence is conclusive that Nicolaci was a strong, healthy man prior to September 11th, 1934, and up to the time he sprained his back in the lumbar region, while attempting to open a freight car door in the course of his employment. The injury was diagnosed as a lumbosacro strain. He suffered from that injury to the time of his death on December 27th, 1934. The primary cause of his death was lobar pneumonia, following lung abscess. There is no evidence that there was any injury to the lungs.

We will quote from the evidence most favorable to the claimant on the subject of the origin of the pneumonia. This testimony is that of Dr. Marioni, to-wit, the decedent's personal physician:

"Q. When did you first treat him after that, Doctor?

A. That was on November 29th.

Q. Of that same year? A. 1934.

Q. For what did you treat him at that time?

A. I was called to his home at that time, and at that time he just had a cough, a nasty cough. At that time he complained of a cough and a cold.

Q. What was the condition of his back and leg at that time?

A. Well, as I said, he still complained of his leg and his back.

Q. What was the progress of his case from that time, Doctor?

* * *

Q. From that time on, Doctor, from the time you first treated him, what was the progress of his general condition?

A. Well, as I· say, I saw him on the 29th and I treated him purely—at the time he had severe bronchitis and slight sore throat, and a congestion of the nose so I ordered something for the cough and for his general cold, and I told him to

call back if he should need—if he wasn't feeling better. Then I called again on December 2nd at his home. His cough was worse, and he was spitting up some blood. His sputum was bloody at times; his chest showed more congestion; his temperature was higher, and the man didn't look just right to me. I was afraid pneumonia would set in, so I advised him he should go to the hospital.

* * *

Q. What was the primary cause of his death, Doctor?

A. Primary cause of death was pneumonia following lung abscess. Lobar pneumonia following lung abscess.

Q. Lobar pneumonia following lung abscess. Were you his attending physician from that time, or while he was in the hospital, to the time of his death?

* * *

Q. You had the case?

A. Yes, it was my case all along.

Q. What was the secondary cause of his death, Doctor?

A. Well, secondary cause of death, the man was in a run-down condition when I first saw him, apparently had lost weight, and there was some anemia, slight secondary anemia. The man had been suffering for quite some time, and in my opinion, due to the fact that his condition was lowered, his resistance was below par."

At this point in the direct examination a long hypothetical question was propounded the conclusion of which was:

"Q. * * * Assuming these facts as I have stated them, will you tell us whether or not, in your opinion, and assuming these facts as I have stated, there was a casual connection between the injury which I have described and the subsequent death—"

To which the witness answered "Yes".

On cross examination, the witness testified:

"Q. As I understand, you first had occasion to see this decedent, Dominick Nicalacci, on September 17th, 1934?

A. That is right.

Q. And then you saw him on two occasions during the month of October, 1934?

A. Yes, sir.

Q. At that time he was given some—

A. Purely symptomatic treatment for pain.

Q. Symptomatic treatment for pain, codine and salicylates?

A. Yes, sir.

Q. He did not have pneumonia at that time?

A. No.

Q. He had a general run-down condition?

A. Yes, sir.

Q. Somewhat anemic? A. Slightly anemic.

᠁. Now you were called to his home on November 29, 1935? A. Yes, sir.

Q. At that time, you found him suffering with cough, cold, sore throat and some bronchial infection? A. Yes, sir.

Q. This man died of pneumonia, did he not?

A. Yes, sir; that was the primary cause; that is what the death certificate shows.

Q. The first symptom of pneumonia that you saw started about November 29th?

A. No, at that time it was purely a bronchitis.

Q. He did not have pneumonia then?

A. Not as far as I could determine by ordinary means.

\* \* \*

Q. Now, pneumonia, Doctor, is caused by bacterial infection, is not that true? A. Yes.

· Q. That enters the lung orally, generally through the mouth?

A. As a general rule.

Q. That is the only place it can unless there is an open wound?

A. It can come through the blood stream, but it is very rare; it is usually through the mouth and nose.

Q. There was no indication here that the baterial germs entered Nicalacci's body through the blood stream? A. No.

Q. So you think a sore throat and bronchial infection gradually developed into pneumonia—

A. Yes.

Q. — and those germs entered through the mouth, did they not, Doctor? A. Yes."

In addition, the employer's physician, who had treated the employee for the sprain of the back, testified:

"A. Did you treat this man in his last illness?

A. For the pneumonia, no; I didn't see him after he developed pneumonia.

Q. He did not have pneumonia on these 48 or 49 occasions you treated him? A. Oh, no, no.

\* \* \*

Q. And if this man had lobar pneumoni᠁ which resulted fatally, and if it started with a sore throat and bronchial infection, would you have an opinion as to where the bacteria entered the body?

A. It would have to enter it through the respiratory organ.

Q. Through the mouth or nose?

A. Through the mouth or nose, sure.

Q. Did you note that this man was somewhat anemic when you were treating him?

A. Not particularly, no; when he was coming to me?"

The court correctly instructed the jury, provided there was evidence that the injury to the back either directly caused or directly contributed to the employee's death.

In passing upon this record, we must not confound this case with one in which it appears that the employee was suffering from a disease at the time of his injury. The distinction between such cases is pointed out in Ackerman v Industrial Commission, 131 Oh St 371, the syllabus of which is:

"1. In an action brought by a dependent for a death award under the Workmen's Compensation Act, on the ground that the injury accelerated a diseased condition and hastened death, such diseased condition must exist at the time of the injury, else the case is not compensable.

"2. Unless and until it is shown that the diseased condition existed at the time of injury, all testimony tendered for the purpose of showing acceleration of a diseased condition is incompetent and should be excluded."

This court had occasion to give application to that principle in Howell v Industrial Commission, 54 Oh Ap 472. (23 Abs 141)

Nor must the case be confounded with those in which a cut or abrasion is inflicted in the course of the employment in which germs find lodgment causing infection resulting in disability or death. The infection under such circumstances clearly is occasioned in the course of the employment. 42 O Jur., 641, et seq.

And in reaching a conclusion, we must bear in mind the difference in the nature of the causal connection between the injury and the employment and that between the injury and the disability or death. It is sufficient that there be some causal connection between the injury and the employment to satisfy the requirement of the law. Industrial Commission v Weaver, 45 Oh Ap 37, 125 Oh St. 465. But having complied with that requirement, the claimant can recover only by proving that the claimed disability or death was the

634

direct or proximate result of such injury. Id. This case, therefore, involves the question whether death caused by disease, contracted after an injury, but entirely disassociated from the injury is compensable because the injury reduced the power of the employee to resist disease.

The answer depends on whether the injury can be said to have directly caused or directly contributed to the death. Cases of this category are by no means as numerous as those relating to pre-existing diseases.

In Ackerman v Industrial Commission, supra, the court denied a recovery where the injury was to a bone of the heel and the subsequent disease was cirrhosis of the liver, notwithstanding a physician testified that he could not detect any other physical disability other than the injury to the heel at the time of the accident but that "They were undoubtedly there."

In the annotation to Bethlehem Shipbuilding Corp. v Industrial Accident Com., (Cal. 185 Pac. 179) 7 A. L. R. 1180, at 1186, it is said:

"It is held that a subsequent incident, or injury, may be of such a character that its consequences are the natural result of the original injury and may thus warrant the granting of compensation therefor as a part of that injury, but that, on the other hand, the facts and circumstances may be such as to establish the second injury as an independent, intervening cause, the effects of which cannot be included in computing the compensation allowable for the original injury, the determination of the question in each case being one of fact to be decided on the evidence."

In Texas Employers' Insurance Ass'n v Burnett, et al., 105 S. W. (2d.) (Texas Supreme Court) 200, the court held as stated in the syllabus:

"1. Beneficiaries of deceased employee did not have right to recover compensation for death of employee, where death was due directly to typhoid fever, an independent intervening agency having no connection with or relation to original injury, notwithstanding the original injury might have to some extent reduced the power of resistance of the employee, and in that manner contributed in some degree to his death.

"2. Diseases which naturally result from injury are themselves classed as an 'injury' and if employee is incapacitated thereby or if he dies therefrom, compensation is allowable."

Appellee's counsel cites several Ohio cases as supporting a recovery. These are decisions of Courts of Appeals, and, of course, would not be controlling, particularly in view of the clear pronouncement of the Supreme Court that to be compensable the death must be the direct result of the injury received in the course of the employment. However, the cases are all distinguishable. In Industrial Commission of Ohio v Holman, 40 Oh Ap., 426 (11 Abs 9) the employee was hit on the head and died of cerebral hemorrhage, which was clearly traceable to the trauma. In Industrial Commission v Bowshier, 41 Oh Ap., 79, (11 Abs 244) the injury aggravated or accelerated a pre-existing condition. This is also true of Industrial Commission v Miller, 10 Abs (Unofficial) 731. In Industrial Commission v Polley, 11 Abs (Unofficial) 267, an autopsy directly connected the fatal disease (meningitis) with the injury. So in Industrial Commission v Collins, 14 Abs (Unofficial) 185, the disease (traumatic pneumonia) was directly connected with the injury, the type of pneumonia in this case being in marked contrast with lobar pneumonia, in its origin. And in West v Industrial Commission, 18 Abs (Unofficial) 366, the evidence tended to prove that the bacilli entered the blood stream through or at the site of the injury.

Our conclusion is, that the evidence fails to show that the employee's death was directly caused or directly contributed to by the injury, and that, therefore, the trial court should have sustained the appellant's motion for an instructed verdict. For this reason, the judgment is reversed, and final judgment rendered in this court for the appellant.

ROSS, PJ and HAMILTON, J. concur.