[Civ. No. 14408. Second Dist., Div. One. June 8, 1944.]

JENNIE MASSING, Respondent, v. CLAIRE DELANO BABCOCK et al., Defendants; LOS ANGELES NATIONAL FARM LOAN ASSOCIATION, Appellant.

Floyd E. Pendell for Appellant.

Lyons & Lyons, Harry Lyons and David Lyons for Respondent.

YORK, P. J.—This is an appeal by defendant Los Angeles National Farm Loan Association from a judgment awarding damages to plaintiff on account of personal injuries alleged to have been sustained by her when she fell on the sidewalk as she emerged from the entrance to premises occupied by said defendant. An appeal is also taken from "the ruling of the court upon the motion for a new trial made upon October 29, 1943, which motion was decided in favor of the plaintiff on said date."

The premises in front of which respondent fell are located at 2319 Huntington Drive, San Marino, California, and consist of a one-story building. In front of said building is a five-foot cement sidewalk which was laid before the building was constructed. The north edge of this sidewalk is parallel with and 30 inches equidistant from the front line of the building. When the building was constructed said 30-inch strip, which runs along the entire front of the building, was laid with cement and converted into an additional sidewalk. However, the floor level of the building being approximately four inches higher than the level of the five-foot cement sidewalk, the 30-inch strip has a gradual slope upward from said sidewalk to the building. Ten days before the accident occurred drill holes or marks had been made by an officer of

the association with a Star drill in the cement ramp or incline, "from the top of the incline to the bottom of the incline."

On August 26, 1942, respondent Jennie Massing, accompanied by her son, Louis Massing, went to the office of appellant to obtain information respecting a parcel of real estate for the purchase of which said respondent was negotiating and against which appellant held an incumbrance. Because respondent's son, Louis Massing, was employed, the Massings were unable to call at appellant's office during business hours, and by previous telephonic arrangement, they arrived there at about six o'clock in the afternoon of the day mentioned, for a conference with Mr. Mann, secretary-treasurer of appellant association. The Massings waited for about forty-five minutes for Mr. Mann, who lived near by, and upon the latter's arrival he opened the office door from the inside and the Massings entered the office. After half or three-quarters of an hour the Massings prepared to leave: Mr. Massing opened the door for his mother, who preceded him through the doorway. She took a step and then took a second step when she slipped and fell on the slope or incline. Mr. Massing called to Mr. Mann for help and, according to Mr. Massing's testimony, Mr. Mann came out "stood there a second, and he took one look at her and he said, 'My God, I was afraid something like this would happen.' And between the two of us, we carried her back to the office and sat her in a chair." Mr. Mann called a doctor at the request of Mr. Massing, and the doctor took respondent to his office. Upon examination it was found that respondent had sustained a bimalleolar fracture of the right ankle with outward and lateral displacement of the ankle joint.

Appellant contends that the "judgment is based primarily upon two findings of fact as follows: (1) '. . . that it is true that immediately adjacent to said doorway defendant Los Angeles National Farm Loan Association maintained an extraordinarily slippery decline immediately to the south of said doorway. . . .' (2) '. . . The Court further finds that the defendant Los Angeles National Farm Loan Association permitted said entrance way to remain and exist in a dangerous, improper and unfit state and condition, to be used, traversed and walked upon, . . . and that as a result thereof a nuisance was created and maintained by said defendant." And it is urged that since the evidence upon which said findings are based is in-

herently improbable, weak and unsatisfactory as a matter of law, it is insufficient to support them. In this connection, appellant argues that the only evidence which might support said findings is that of Louis Massing, son of respondent, who testified that he ran his hand over the cement and the walk and that it was *definitely slippery;* and that other uncontradicted evidence not only disproves this testimony but brands it as inherently improbable, if not physically impossible.

The witness Walker, an architect of thirty years' experience, after testifying that he examined the property in question for the first time on July 22, 1943, nearly a year after the accident occurred, was asked "And Mr. Walker, at the time you examined the building what was the condition of what I term the threshold, being that portion of the entrance to the building between the sidewalk and the level, or near the level, cement entrance, to the door—what was the condition of that?" After objection to the question was overruled by the trial court because the witness "can give me as an expert, some knowledge," the witness Walker replied: *"I would have to say it was slippery.* However, it was interrupted with abrasions apparently made with a diamond drill, that should have made it reasonably safe. If I may amplify a bit: It was a steel trowel cement job, which always leaves a slippery surface unless an abrasive is used— the surface is slippery, but if it had perforations in it, it (they) should have been adequate to make it non-slippery. . . . By the Court: Mr. Walker, occasionally contractors sometimes use a dust or something that will give a concrete sidewalk a different shade or color, do they not? A. That is correct. . . . Q. Was that done as you saw this property? A. No, apparently it was not. It was apparently merely a steel trowel job, which means it has *a very even, very smooth surface.* Q. It could have been done so as to leave the surface rough? A. Yes, they use a wood trowel on the concrete to leave a rough surface. Q. They didn't do that in this case? A. They didn't but substituted, apparently, in lieu, the transverse marks which were made apparently with a diamond drill."

Mr. Mann testified that he had placed two hundred holes in the cement approach to the building with a Star drill sometime prior to the date of respondent's fall and that subsequent thereto additional abrasions were made on that par-

ticular piece of cement. Also that no one had complained to him prior to August 26, 1942, of the improper condition of the entrance to said building. In his deposition taken prior to trial, the witness Mann testified that he examined the incline "within a day or two afterwards. I put this rubber mat outside."

It is well settled that the relative weight to be given to the opinion testimony and factual evidence, hereinbefore recited, is for the trial court. (*Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 766 [128 P.2d 665]; *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 654 [122 P.2d 576]; *Shaw* v. *Owl Drug Co.*, 4 Cal.App.2d 191, 196 [40 P.2d 588].) From such testimony, together with the inferences that could have been drawn therefrom respecting the smooth or slippery condition of the incline, it became a question of fact for the trial court to determine whether or not said incline was slippery at the time of respondent's fall. And the fact that the first of the findings complained of used the words "extraordinarily slippery" in describing the incline or ramp, while the evidence described it as "very, very smooth" and "definitely slippery" is probably due to the fact that appellant's counsel in questioning the witness Walker used the word "extraordinarily" at least twice. At any rate, the record reveals evidence sufficiently substantial in character to support the findings of fact referred to.

Appellant also urges as a ground for reversal of the judgment the trial court's failure to make a finding of fact on the issue of contributory negligence of respondent which was raised by the answer. It is contended that the following testimony of respondent is sufficient to sustain such issue, to wit: "Q. As you approached the door, did you have occasion to look in front of you? Well, I will change that. Where were you looking as you *approached that door?* A. I was looking at my car—— the car was parked in front of the door, and I still had the business in mind that I was talking to Mr. Mann about."

The evidence pointed out by appellant is not sufficient to sustain a finding of contributory negligence on the part of respondent, because she did not fall as she *approached* the door, but *after she had walked through it,* her testimony being to the effect that as she looked out toward her car she observed the appearance of the sidewalk and the ramp which

"looked level" and that she walked out, took two steps and fell.

In the circumstances, a finding upon the issue of contributory negligence of necessity would have been adverse to appellant, consequently the omission to make such finding may be disregarded since such omission did not result in a miscarriage of justice. (Const., art. VI, § 4½.) See, also, *Niles* v. *Louis H. Rapoport & Sons,* 53 Cal.App.2d 644, 651 [128 P.2d 50], and authorities there cited.

For the reasons stated, the judgment is affirmed. The appeal from the order denying motion for new trial is dismissed.

Doran, J., and White, J., concurred.